UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVID SULLIVAN,

                    Plaintiff,                           Case No. 1:07-cv-367

v.                                       Honorable Robert J. Jonker

PATRICIA CARUSO et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff must pay the initial partial filing fee when funds are available.  Plaintiff is currently incarcerated at the G. Robert Cotton Correctional Facility but the events giving rise to his complaint occurred while he was at the Carson City Correctional Facility (DRF).  In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia Caruso, Correctional Facilities Administration (CFA) Special Activities Coordinator Dave Burnett, DRF Warden Thomas Bell, and DRF Chaplain (unknown) Adamson.  On May 3, 2007, this Court ordered service of Plaintiff's complaint on Defendants (docket #4).

        On June 7, 2007, Defendants Caruso, Bell, Burnett and Adamson filed a motion and supporting brief for summary judgment because Plaintiff failed to exhaust his administrative remedies (dockets #11, 12).  Plaintiff filed a response and affidavit to Defendants Caruso, Bell,

Burnett and Adamson's motion for summary judgment on June 22, 2007 (dockets #15, 16). On July 10, 2007, Defendants Caruso, Bell, Burnett and Adamson filed a reply (docket #19).

Upon review, I recommend that Defendants Caruso, Bell, Burnett and Adamson's motion for summary judgment (docket #11) be denied in part as to Plaintiff's First and Fourteenth Amendment claims and conspiracy claims against Defendants Adamson, Burnett and Bell. I also recommend that Defendants' motion for summary judgment be granted in part as to Plaintiff's First and Fourteenth Amendment claims against Defendant Caruso.

## Applicable Standard for Summary Judgment

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

- 3 -

Where, however, a defendant attempts to establish an affirmative defense on summary judgment, he or she bears the burden of proving "that there is no genuine issue as to any material fact and that [he or she] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *Thomas v. Speedway SuperAmerica, LLC*, 2007 WL 3145335, at *3 n.2 (6th Cir. Oct. 30, 2007).

### Facts

In his *pro se* complaint, Plaintiff alleges that Defendants Caruso, Bell, Burnett and Adamson violated his rights for failing to accommodate his religion, Buddhism, by way of a vegetarian diet. (Compl. at 5[1], docket #1.) While Plaintiff does not list specific constitutional violations in his complaint, he refers to his right "to receive the appropriate diet designated by his religion of Buddhism, which is safeguarded by the 1st, and 14th Amendment[s] of the United States Constitution" in his response to Defendants' Motion for Summary Judgment.[2] (Pl.'s Resp. at 1, docket #15.) Plaintiff also claims that Defendants Adamson, Burnett and Bell conspired to deprive him of his right to practice his religious beliefs. (Compl. at 6-7.)

After transferring to DRF, Plaintiff requested an accommodation for a strict vegetarian diet in accordance with Buddhism. In October, 2006, Plaintiff sent correspondence to Defendant Adamson to obtain a vegetarian diet. (Compl. at 5.) Defendant Adamson subsequently interviewed Plaintiff but ultimately determined that Plaintiff was not sincere about pursuing Buddhism. (Ex. 2 to Compl., docket #1.) Defendant Adamson then submitted his report to Defendant Bell, who forwarded his recommendation to Defendant Burnett for approval. (Ex. 3 to Compl.) After reviewing Defendant Adamson's report, Defendant Burnett denied Plaintiff's request

---

[1]This Court used the page numbers assigned by CM/ECF for Plaintiff's complaint for clarity.

[2]In Defendants' supporting brief to their motion for summary judgment, Defendants also refer to Plaintiff's claims as First and Fourteenth Amendment violations. (Defs.' Br. in Supp. of Mot. for Summ. J. at 1, docket #12.)

for a strict vegetarian diet.  In his memorandum to Defendant Bell dated October 30, 2006, Defendant Burnett noted that Plaintiff may be motivated by a desire to be transferred from DRF rather than to pursue the practices of his religion.  (Ex. 2 to Compl.)

On October 11, 2006, Plaintiff filed Grievance No. DRF-06-1001-04-120E against Defendants Adamson and Burnett for failing to provide him with a vegetarian diet.  (Ex. 1 to Compl.)  He appealed Grievance No. DRF-06-1001-04-120E through the three-step grievance process.  On October 30, 2006, Plaintiff filed three grievances, Grievance Nos. DRF-06-110-1146-28A, DRF-06-110-1145-28A and DRF-06-110-1144-22A against Defendants Adamson, Burnett, and Bell, respectively.  (Ex. 4 to Compl.)  Those grievances were all rejected as being duplicative of  Grievance No. DRF-06-1001-04-120E at Steps I, II and III.  (Exs. 4, 5, 6, 7 to Compl.)

Plaintiff requests injunctive and declaratory relief and monetary damages.  (Compl. at 7-8.)

## Discussion

### I.    Standard

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order

to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In *Woodford*, 126 S. Ct. at 2387, the Supreme Court described the doctrine of "proper exhaustion" in administrative law. "Proper exhaustion" occurs when a plaintiff complies with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 2386-388. It is a precondition to any suit challenging prison conditions. *Id.* As "a general rule . . . [,] courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Id.* at 2385 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis in original)). In the cases cited by the Supreme Court, the doctrine justifies the requirement for objections to be made during administrative proceedings because the administrative agency should be afforded an opportunity to correct the problem before the issue is reviewed by a court. *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37. *See also Sims v. Apfel*, 530 U.S. 103, 108-09 (2000) (finding that where an agency's regulations require issue exhaustion, an objection not raised will not be considered by a court); *Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946) ("[t]he responsibility of applying the statutory provisions to the facts of the particular case was given in the first instance to the Commission. A reviewing court usurps the agency's function when it sets aside an administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider

the matter, make its ruling, and state the reasons for its action."); *Hormel v. Helvering,* 312 U.S. 552, 556-57 (1941).

In addition to finding that the text of the Prison Litigation Reform Act of 1995 (PLRA) relied on the proper exhaustion doctrine, the *Woodford* Court found the doctrine fit within the general scheme of the PLRA. *Woodford,* 126 S. Ct. at 2387. Proper exhaustion serves the PLRA goals of (1) limiting federal court interference with the administration of prisons, (2) affording officials time and opportunity to address complaints internally before the initiation of a federal lawsuit, and (3) reducing the quantity and improving the quality of prisoner suits. *Id.*

The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify *Woodford's* holding regarding "proper exhaustion." In *Jones,* the Supreme Court rejected several procedural rules governing the exhaustion requirement adopted by the Sixth Circuit. The Sixth Circuit required (1) prisoners to allege and demonstrate exhaustion in the complaint, (2) prisoners to sue only those individuals who were identified in the grievance, and (3) the courts to dismiss the entire action if the prisoner failed to satisfy the exhaustion requirement as to any claim in his or her complaint under the total exhaustion rule. *Jones,* 127 S. Ct. at 914. The *Jones* Court concluded that the PLRA did not support any of those requirements. *Id.* First, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.* In rejecting the requirement that a prisoner had to identify any party he or she sought to sue in an initial grievance, the *Jones* Court concluded the Sixth Circuit's policy lacked a textual basis:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners
> must "complete the administrative review process in accordance with the applicable

procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)-rules that are
defined not by the PLRA, but by the prison grievance process itself. Compliance
with prison grievance procedures, therefore, is all that is required by the PLRA to
"properly exhaust." The level of detail necessary in a grievance to comply with the
grievance procedures will vary from system to system and claim to claim, but it is
the prison's requirements, and not the PLRA, that define the boundaries of proper
exhaustion. As the MDOC's procedures make no mention of naming particular
officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion
is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[3] Finally, the *Jones* Court also struck down the Sixth Circuit's total

exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and

dismiss the unexhausted claims. *Id.* at 924-26.

### II.    **Applicable Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[4] was the version in

effect at all times applicable to this lawsuit. Under MDOC Policy Directive 03.02.130, inmates must

first attempt to resolve a problem orally within two business days of becoming aware of the

grievable issue with the staff member involved, unless prevented by circumstances beyond his or

her control. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R. If oral resolution is

unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed

grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy

Directive also provides the following directions for completing grievance forms: "[t]he issues shall

be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved

---

[3]Because "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that
"the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones,* 127 S. Ct. at 923.
The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version
of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

[4]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the December 19, 2003
version of the Policy Directive was in effect at all times applicable to the instant action.

(i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ T (emphasis in original).  Once a grievance is filed, the grievance coordinator determines if the grievance should be rejected "pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected." *Id.* at ¶ Y.  The paragraph continues

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due . . . . The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or reject[] for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required by Paragraph AA.

*Id.*  At the interview, a grievant has an opportunity to explain the grievance more completely so that the respondent can gather any additional information necessary to respond to the grievance.  *Id.* at ¶ AA.

The Policy Directive provides a number of reasons for which a grievance *must* be rejected and other reasons for which a grievance *may* be rejected.[5]  A grievance coordinator must reject grievances (1) that are jointly filed by two or more prisoners or identical individual grievances filed by multiple prisoners as an organized protest, (2) which raise certain non-grievable issues, and (3) that use profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance.  *Id.* at ¶¶ F, G. In contrast, a grievance coordinator has discretion to reject a grievance that is (1) vague, illegible, contains multiple unrelated issues or issues raised in another grievance filed by the same prisoner, (2) filed

---

[5]Portions of Policy Directive 03.02.130 use the words "shall be rejected" while other portions use the words "may be rejected."  *See* Mich. Dep't. of Corr., Policy Directive 03.02.130, ¶¶ F, G.

by a prisoner on modified access, (3) filed by a prisoner who did not attempt to resolve the issue with a staff member first, or (4) filed in an untimely manner. *Id.* at ¶ G.

The Policy Directive provides guidelines, including deadlines, for internal appeals of the denial of a grievance at Step II and Step III. *See id.* at ¶¶ R, DD. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

III.     **Grievances**

Plaintiff filed four grievances concerning the claims raised in his complaint.  Each of the grievances will be discussed below.

A.     **Grievance No. DRF-06-100-1041-20E**

Plaintiff filed Grievance No. DRF-06-100-1041-20E on October 11, 2006.   In Grievance No. DRF-06-100-1041-20E, Plaintiff asked Defendant Adamson to contact Defendant Burnett for approval "to receive a diet appropriate for [Plaintiff's] designated religion, Buddhism." (Ex. 1 to Compl., docket #1.)  Plaintiff also requested that DRF transfer him to another facility, so he could obtain a strict vegetarian diet pursuant to MDOC Policy Directive "05.03.150A."  (*Id.*)

The MDOC issued a Step I response on October 27, 2006, which addressed Plaintiff's grievance on the merits, and denied it because the Correctional Facilities Administration had not yet approved Plaintiff's request:

> I talked to the Grievant and he said that he wanted to be considered for the [s]trict [v]egetarian diet line.  Chaplain Adamson said he interviewed the Grievant as per [sic] PD 05.03.150 requires.  He sent his report to Warden Bell who then sent his recommendation to CFA on 10/23/06.  CFA in turn makes the decision to approve or deny the request at this time.  There is no violation of PD 05.03.150.

(*Id.*)

Plaintiff then appealed his grievance to Step II.  The Step II response addressed the grievance on the merits as follows:

> You state in your Step I grievance your desire to be considered for the strict vegetarian diet line.  The Chaplain interviewed you as required in PD 05.03.150 and submitted his report to the Warden who forwarded his recommendation to CFA for approval.  There has been no determination from the CFA Special Activities Coordinator at this time.  I find no violations in the handling of this grievance.  Step II appeal is denied.

- 11 -

(Ex. 3 to Compl., docket #1.)  Plaintiff finally appealed his grievance to Step III on November 9,

2006 but did not attach a Step III response to his complaint.  Defendants attached the Step III

grievance to their motion for summary judgment.  (Ex. 2 to Defs.' Br. in Supp. of Mot. for Summ.

J., docket #12.)  The Step III grievance response states:

> This investigator has reviewed the record presented with the appeal to Step Three.
> All relevant information was considered.  Based on this review, this writer finds the
> responses provided at Steps One and Two adequately address the merits of the main
> issue grieved.
>
> The record presented with the appeal does not suggest that further action is justified
> at this level.  The grievant's request for a strict vegetarian diet for religious reasons
> was processed, and denied, in accordance with PD 05.03.150 "Religious Beliefs and
> Practices of Prisoners."  No violation of policy has been found.  This grievance
> appeal is denied.  It is noted that the grievant was transferred to SLF on 11-9-06, to
> LRF 12-20-06 and to IBC on 1-24-07.

(*Id.*)

In his *pro se* complaint, Plaintiff alleges Defendants Caruso, Bell, Burnett and

Adamson violated his First and Fourteenth Amendment rights by failing to accommodate his

religion, Buddhism.  Plaintiff also claims that Defendants Adamson, Burnett and Bell conspired to

deprive Plaintiff of his right to practice his religious beliefs.  In Defendants Adamson, Burnett, Bell

and Caruso's motion for summary judgment, they argue that Plaintiff failed to exhaust his available

administrative remedies because he did not name all of the Defendants and issues in his Step I

grievance in accordance with MDOC Policy Directive 03.02.130, ¶ T.  (Defs.' Mot. for Summ. J.

at 2, docket #11.)  Defendants state that if Plaintiff's lawsuit was based on the claim that Defendant

Adamson did not follow through with his report, and, thus, interfered with Plaintiff's rights, the

grievance would have been exhausted.  (Defs.' Br. in Supp. of Mot. for Summ. J. at 6, docket #12.)

However, Plaintiff's complaint alleges that Defendants "deprived him of his religious rights," which Defendants argue is an entirely different claim. (*Id.*).

Besides alleging that he "properly exhausted his claims," Plaintiff did not specifically address Defendants' arguments in his Response to Defendants' Motion for Summary Judgment. (Pl.'s Resp. at 1-2, docket #15.) Rather, he supports his reason for filing three additional grievances against Defendants Adamson, Burnett and Bell and consolidating the appeals of those grievances.[6] (*Id.* at 1.) Plaintiff argues that he had to use separate grievance forms for each issue. In his response, Plaintiff also asserts a new claim against Defendant Adamson for his failure to follow MDOC Policy Directive "05.03.150A," and a general equal protection claim against Defendants. (*Id.*; Aff. at 1, docket #16.) Plaintiff may not add new claims without filing a motion to amend his complaint in compliance with the Federal Rules of Civil Procedure. Therefore, Plaintiff's claims against Defendant Adamson for violating Policy Directive 05.03.150A and his equal protection claim are not properly before this Court.

Defendants argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants and issues in his grievance. (Defs.' Br. in Supp. of Mot. for Summ. J. at 5-6, docket #12.) In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion. This version of the MDOC Policy Directive states: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." MICH. DEP'T. OF

---

[6]This Court addresses the three grievances against Defendants Adamson, Burnett and Bell, which Plaintiff references in his response, in Section III (B) below.

CORR., Policy Directive 03.02.130, ¶ T (emphasis in original).  Although the MDOC did not reject

or deny Plaintiff's Grievance No. DRF-06-100-1041-20E in a Step I, II or III response under MDOC

Policy Directive 03.02.130, ¶ T, for failure to name the issues or persons being grieved, Defendants

properly raised both objections for the first time in their motion for summary judgment.  When a

plaintiff fails to name any defendant in his or her grievance so the MDOC is immediately on notice

of the plaintiff's failure to provide the names of those who were involved, then the MDOC should

reject a plaintiff's grievance in Steps I, II and III responses under MDOC Policy Directive

03.02.130, ¶ T for the plaintiff's failure to name any defendants in his or her grievance.  On the other

hand, when a plaintiff names certain individuals in the grievance, then the MDOC would have no

reason to know that a plaintiff would be suing different individuals until the plaintiff filed his

complaint.  In that scenario, defendants must raise the procedural rule in their motion for summary

judgment.  Plaintiff specifically named Defendants Adamson and Burnett in Step I of Grievance No.

DRF-06-100-1041-20E.  Because Plaintiff named two Defendants in his grievance, Defendants

properly raised Plaintiff's failure to exhaust for the first time in their motion for summary judgment.


        The *Woodford* Court noted:

> Because exhaustion requirements are designed to deal with parties who do not want
> to exhaust, administrative law creates an incentive for these parties to do what they
> would otherwise prefer not to do, namely, to give the agency a fair and full
> opportunity to adjudicate their claims.  Administrative law does this by requiring
> proper exhaustion of administrative remedies, which "means using all steps that the
> agency holds out, and doing so properly (so that the agency addresses the issues on
> the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted).  "[A]s a general rule . . . courts should not topple

over administrative decisions unless the administrative body not only has erred, but has erred against

- 14 -

objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37 (emphasis omitted)).  In this case, Defendants did not err by failing to raise an objection under MDOC Policy Directive 03.02.130, ¶ T, in a Step I, II or III response.  Therefore, Defendants properly satisfied their burden as to Defendants Bell and Caruso because they were not named in Plaintiff's grievance, and, thus, Plaintiff's claims against Defendants Bell and Caruso are unexhausted.  Defendants, however, failed to satisfy their burden as to Defendants Adamson and Burnett, who were specifically named in Plaintiff's grievance.  As a result, Plaintiff's claims against Adamson and Burnett are considered exhausted.

Defendants also argue that Plaintiff did not follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the issues in his grievance, mainly that Defendants violated Plaintiff's religious rights.[7]  Defendants allege that if Plaintiff's lawsuit was based on the claim that Defendant Adamson did not follow through with his report, and, thus, interfered with Plaintiff's rights, then Grievance No. DRF-06-100-1041-20E would have been exhausted. (Defs.' Br. in Supp. of Mot. for Summ. J. at 6, docket #12.)  Although Plaintiff does not refer to constitutional violations in his complaint, Defendants state that Plaintiff asserts First and Fourteenth Amendment claims for the violation of his religious rights in their supporting brief for summary judgment. (*Id.* at 1.)

In his grievance, Plaintiff asked Defendant Adamson to contact Defendant Burnett for approval "to receive a diet appropriate for [Plaintiff's] designated religion, Buddhism."  (Ex. 1 to Compl., docket #1.)  Reading Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), Plaintiff appears to allege a First and Fourteenth Amendment claim.  As the

---

[7]In their motion for summary judgment, Defendants never mentioned Plaintiff's conspiracy claim, which is discussed below in Section III (D).

Supreme Court held, exhaustion is an affirmative defense, which "defendants have the burden to plead and prove." *Nixon v. Sanders*, No. 06-1013, 2007 WL 2349344, at *1 (8th Cir. Aug. 17, 2007) (citing *Jones*, 127 S. Ct. at 919-22). I find that Plaintiff adequately alleged a violation of his rights under the First and Fourteenth Amendment in his grievance. Therefore, Defendants have failed to satisfy their burden.

> B.    **Grievance Nos. DRF-06-110-1146-28A, DRF-06-110-1145-28A, and DRF-06-110-1144-22A**

Plaintiff filed three grievances on November 6, 2006: Grievance No. DRF-06-110-1146-28A against Defendant Adamson, Grievance No. DRF-06-110-1145-28A against Defendant Burnett, and Grievance No. DRF-06-110-1144-22A against Defendant Bell. In those grievances, Plaintiff alleges that he is being denied "his fundamental right to practice his designated religion, Buddhism." (Ex. 4 to Pl.'s Compl., docket #1.)

The MDOC issued a Step I response for each grievance, denying all of the grievances as duplicative of Grievance No. DRF-06-100-1041-20E. (*Id.*) Plaintiff then appealed each grievance to Step II. The Step II response also rejected all of the grievances as duplicative, noting that "[f]iling a new grievance on the same issue is a violation of PD 03.03.130." (Ex. 6 to Pl.'s Compl.) Once again, Plaintiff appealed each grievance to Step III. The Step III response also rejected Plaintiff's grievances as duplicative. (Ex. 7 to Pl.'s Compl.)

MDOC Policy Directive 03.02.130, ¶ G, states that a grievance may be rejected when it is "vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." The MDOC properly rejected Grievance Nos. DRF-06-110-1146-28A and DRF 06-110-1145-28A against Defendants Adamson and Burnett, respectively, for being duplicative of Grievance No. DRF-06-100-1041-20E. Plaintiff filed

Grievance No. DRF-06-100-1041-20E against Defendants Adamson and Burnett for failing to accommodate Plaintiff's vegetarian diet in accordance with the practices of his religion.   In Grievance Nos. DRF-06-110-1146-28A and DRF-06-110-1145-28A, Plaintiff also asserts that he "is being denied his fundamental right to practice his designated religion." (Ex. 4 to Compl., docket #1.)  Plaintiff named Defendants Adamson and Burnett in Grievance No. DRF-06-100-1041-20E; therefore, he was prohibited from filing another grievance against Defendants Adamson and Burnett asserting the same claims under MDOC Policy Directive 03.02.130, ¶ G.  Because Plaintiff failed to comply with MDOC Policy Directive 03.02.130, ¶ G, he did not properly exhaust his administrative remedies against Defendants Adamson and Burnett in Grievance Nos. DRF-06-110-1146-28A and DRF-06-110-1145-28A, respectively.  *See  Woodford,* 126 S. Ct. at 2386; *see also Kinard v. Rubitschun,* No. 2:05-cv-74131, 2007 WL 655309, at *8 (E.D. Mich. Feb. 27, 2007). Nevertheless, in Section III (A) of this report and recommendation, I found that Plaintiff properly exhausted his First and Fourteenth Amendment claims against Defendants Adamson and Burnett in Grievance No. DRF-06-100-1041-20E.  As a result, Plaintiff's First and Fourteenth Amendment claims against Defendants Adamson and Burnett are considered exhausted regardless of the MDOC's findings in Grievance Nos. DRF-06-110-1146-28A and DRF-06-110-1145-28A.

I find that the MDOC's rejection of Grievance No. DRF-06-110-1144-22A against Defendant Bell, as duplicative of Grievance No. DRF-06-100-1041-20E, is misplaced.  "Courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citation omitted) (emphasis omitted).  The MDOC erred in dismissing Plaintiff's grievance as duplicative.  Plaintiff did not name Defendant Bell in his earlier grievance, Grievance

No. DRF-06-100-1041-20E.  Because Plaintiff asserted First and Fourteenth Amendment claims against Defendant Bell for denying his right to practice Buddhism for the first time in Grievance No. DRF-06-110-1144-22A, the MDOC should not have rejected Grievance No. DRF-06-110-1144-22A against Defendant Bell as duplicative.  *See Spruill v. Gillis*, 372 F.3d 218, 232 ("[A] prison grievance system's procedural requirements [may] not be imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a).")  Accordingly, Defendants failed to satisfy their burden as to Defendant Bell, and, thus, Plaintiff's First and Fourteenth Amendment claims against Defendant Bell are considered exhausted.

C.     **Defendant Caruso**

In his complaint, Plaintiff alleges that Defendant Caruso violated his rights to practice his religion.  Defendants Caruso, Bell, Burnett and Adamson, however, argue that Plaintiff failed to exhaust his claims against Defendant Caruso through the three-step grievance process.  (Defs. Resp. at 1-3, docket #19.)  In Plaintiff's affidavit, he states:

> 7.      Patricia Caruso was aware of the denial of my right to Freedom of Religious Practices, which also extends to the Buddhist strict vegetarian diet.  Accordingly, Step III was directed to <u>Director Response</u> (see exhibit <u>5</u>:  Plaintiff's Step III form CSJ-247B).

> 8.      According to M.D.O.C. Policy Directive 03.02.130[], it would be improper to name Patricia Caruso in a Step I response, because Step I responses are designed to allow the Facility the opportunity to respond to a complaint/grievance at the first step.  Thereafter to a Step II Warden Response, provided that Step I was denied.

(Pl.'s Aff. at 2, docket #16) (emphasis in original.)  Plaintiff does not argue or allege that he exhausted his available administrative remedies as to his claims against Defendant Caruso by filing a grievance through the three-step grievance process.  Rather, Plaintiff argues that he is not required

to name Defendant Caruso through the three-step grievance process because a Step III appeal is sent to the Director's office. (*See id.*)

The PLRA requires a prisoner to exhaust the administrative remedies available to him or her before bringing a claim under Section 1983. 42 U.S.C. § 1997e(a); *see also Porter*, 534 U.S. at 532; *Booth*, 532 U.S. at 733. To properly exhaust, the *Woodford* Court found that a plaintiff must comply with the administrative agency's "critical procedural rules." *Woodford,* 126 S. Ct. at 2388. MDOC Policy Directive 03.02.130, ¶ T, states: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T (emphasis in original). As Defendants properly asserted, Plaintiff is required to name Defendant Caruso in a Step I response to exhaust his available administrative remedies against Defendant Caruso. Therefore, Defendants satisfied their burden as to Defendant Caruso, and, thus, Plaintiff's claims against Defendant Caruso are unexhausted.

### D.   **Conspiracy Claim**

While Defendants Caruso, Bell, Burnett and Adamson filed a motion for summary judgment, they did not address Plaintiff's conspiracy claim against Defendants Adamson, Burnett and Bell. (Compl. at 6-7, docket #1.) In their supporting brief, Defendants allege that Plaintiff asserts only First and Fourteenth Amendment claims. (Defs.' Br. in Supp. of Mot. for Summ. J. at 1, docket #12.) As the Supreme Court held, exhaustion is an affirmative defense, which "defendants have the burden to plead and prove." *Nixon*, 2007 WL 2349344, at *1 (citing *Jones*, 127 S. Ct. at 919-22). Defendants failed to argue in their summary judgment motion that Plaintiff did not exhaust

his available administrative remedies as to his conspiracy claim.  Given that the burden remains on Defendants Caruso, Bell, Burnett and Adamson to plead and prove the affirmative defense, summary judgment is inappropriate on this record as to Plaintiff's conspiracy claim against Defendants Adamson, Burnett and Bell.


IV.   **Summary**

In summary, I find that Defendants Caruso, Bell, Burnett and Adamson's motion for summary judgment (docket #11) be denied in part as to Plaintiff's First and Fourteenth Amendment claims and conspiracy claims against Defendants Adamson, Burnett and Bell.  I also find that Defendants Caruso, Bell, Burnett and Adamson's motion for summary judgment be granted in part as to Plaintiff's First and Fourteenth Amendment claims against Defendant Caruso.

**Recommended Disposition**

For the foregoing reasons, I recommend that         Defendants Caruso, Bell, Burnett and Adamson's motion for summary judgment (docket #11) be denied in part and granted in part. I also recommend that the Court dismiss  Plaintiff's complaint against Defendant Caruso without prejudice pursuant to 42 U.S.C. § 1997e(a).


Dated:  January 11, 2008                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).